1    CHUCK P. EBERTIN (SBN 161374)
      cebertin@velaw.com
2    VINSON & ELKINS LLP
      1841 Page Mill Road, Suite 200-B
3    Palo Alto, CA  94304
      Tel:  (650) 687-8200 / Fax: (650) 618-1970
4
      Attorneys for Plaintiff
5    SANDISK CORPORATION

# Filed

AUG 0 8 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

**CV 13   80165   MISC.**

11   SANDISK CORPORATION,

12              Plaintiff,

13   vs.

14   MICRON TECHNOLOGY INC.,

15              Defendant.

16   IN RE: SUBPOENA ISSUED IN:

17   SANDISK CORPORATION,

18              Plaintiff and Counterclaim Defendant,

19   vs.

20   ROUND ROCK RESEARCH LLC,

21              Defendant and Counterclaim Plaintiff.

22

23

24

25

26

27

28

Misc. Case No. _____
[Related to Action Currently Pending in
the U.S. District Court, N.D. Cal.
Case No. 3:11-cv-05243-RS]

**HRL**

**SANDISK'S NOTICE OF MOTION,
MOTION, AND MEMORANDUM IN
SUPPORT OF ITS MOTION TO
COMPEL PRODUCTION OF
SUBPOENAED DOCUMENTS
FROM MICRON TECHNOLOGY
INC.**

# PUBLIC VERSION

SanDisk's Motion to Compel Micron's
Production of Documents
2019901

Case No. _____

# TABLE OF CONTENTS

Page

I.    INTRODUCTION. .......................................................................................................... 1

II.   ARGUMENT.................................................................................................................. 2

      A.    Background. ........................................................................................................ 2

      B.    Legal Standard. .................................................................................................. 4

      C.    Micron's Discovery Shortcomings Have Prejudiced SanDisk. ......................... 4

            1.    Micron Has Not Produced All Documents Showing the Incorporation
                  of the Claimed Features in Micron's Products (Document Request
                  Nos. G-1, I-1, I-2, J-1, and K-1). ......................................................... 4

            2.    Micron Has Not Produced Documents Relevant to the Marking of
                  Micron's Products (Document Request No. C-5)................................... 9

            3.    Micron Has Not Produced All Responsive Inventors' Notebooks
                  (Document Request No. C-4). ............................................................... 11

            4.    Micron Has Not Produced All Documents Showing Its Analyses and
                  Knowledge of SanDisk Products and Investments (Document Request
                  Nos. L-1 through L-7).......................................................................... 13

            5.    Micron Has Not Produced All Documents Showing Its Obligations to
                  JEDEC or ONFi (Document Requests Nos. M-1 and M-2). ............... 17

III.  CONCLUSION.............................................................................................................. 20

**TABLE OF AUTHORITIES**

<u>Page(s)</u>

**Cases**

*Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*,
224 F.R.D. 644 (N.D. Cal. 2004)................................................................................... 10

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
138 F. 3d 1437 (Fed. Cir. 1998)..................................................................................... 9

*Soto v. City of Concord*,
162 F.R.D. 603 (N.D. Cal. 1995)..................................................................................... 4

**Statutes**

35 U.S.C. § 287(a) ................................................................................................ 9, 10

**Rules**

Fed. R. Civ. P. 26(b)(1)............................................................................................. 4

Fed. R. Civ. P. 37(a)(3)............................................................................................. 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT as soon as this matter may be heard before the United States District Court for the Northern District of California, plaintiff SanDisk Corporation ("SanDisk"), pursuant to Federal Rules of Civil Procedure 26, 37, and 45, will, and hereby does, move for an Order compelling Micron Technology Inc. ("Micron") to provide a more complete production of subpoenaed materials and to otherwise supplement its deficient document responses within ten calendar days of the date of any order resulting from this motion. The subpoena was issued and served in this District. This motion is based on this Notice of Motion and Motion, the following memorandum, the pleadings and papers on file herein, any oral argument before the Court, and any other matters the Court may request or consider.

## I.     INTRODUCTION.

In 2009, Micron sold roughly 4,200 patents and patent applications to a non-practicing entity called Round Rock Research ("Round Rock"), with the understanding that Round Rock would license and/or litigate those patents and pay Micron in connection with those enforcement efforts. Round Rock is presently asserting nine patents previously owned by Micron against SanDisk. [*See SanDisk Corp. v. Round Rock Research LLC*, No. 3:11-cv-05243-RS (N.D. Cal. 2011) ("*Round Rock*").] In connection with that litigation, on January 9, 2013, SanDisk served a subpoena and a set of forty-eight document requests on Micron. [*See* Declaration of Janice Ta in Support of SanDisk's Motion to Compel Micron's Production of Documents, executed Aug. 6, 2013 ("Ta Decl."), Ex. A.] Nearly seven months later, and with only one month left until the close of fact discovery, Micron— the entity that developed, prosecuted and implemented the patented features at issue—has produced only 1,270 documents and has failed to produce documents with regard to many important document requests. SanDisk now seeks an order compelling Micron to provide discovery regarding, among other things: (1) the incorporation of the claimed features in products by Micron or its licensees; (2) Micron's patent marking efforts, or lack thereof; (3) the inventors' notebooks and documents relating to the patents-in-suit; (4) Micron's knowledge and analyses of the accused SanDisk products; and (5) communications between Micron and various standard setting organizations

1   regarding their patent disclosure policies and the adoption of various industry standards. Micron has

2   thus far refused to produce these documents even though they are fundamental to SanDisk's claims

3   and defenses, not the least of which include SanDisk's claims of invalidity, non-infringement,

4   equitable estoppel, laches, lack of patent marking, implied license, first sale, and patent exhaustion.

5   [*See* Ta Decl., Ex. B; *see generally Round Rock*, Dkt. No. 92.] Because Micron's failure to produce

6   these documents impedes SanDisk's ability to obtain and respond to discovery requests, prepare for

7   depositions, and develop its damages analysis, SanDisk requests that the Court compel Micron to

8   comply with its discovery obligations within ten calendar days of the date of any order resulting

9   from this motion.

10  **II.    ARGUMENT.**

11      **A.    Background.**

12      In 2008 and 2009, Micron orchestrated a scheme to dispose of over 4,200 patents and patent

13  applications and transfer them to non-practicing entity Round Rock, so that Round Rock could

14  systematically assert those patents against Micron's competitors. On October 27, 2011, Round Rock

15  made a presentation to SanDisk, suggesting that SanDisk should pay Round Rock $229 million for a

16  license to the 4,200+ patents and applications that Micron had transferred to Round Rock. SanDisk

17  filed an action for declaratory relief in the Northern District of California seeking a declaration that

18  certain Round Rock patents identified in the presentation were invalid or not infringed. [*Round*

19  *Rock*, Dkt. No. 1.] Because Micron is ostensibly the real party at interest in this litigation and

20  because Micron actually developed, prosecuted, and implemented the patented features at issue, the

21  documents in Micron's possession are critical to SanDisk's ability to defend itself in the litigation.

22  Nevertheless, by hiding behind its anticompetitive partnership with Round Rock, Micron appears to

23  believe it can shield itself from its discovery obligations and has refused to produce responsive

24  documents.

25      SanDisk has given Micron ample time and opportunity to produce documents. On January 9,

26  2013, SanDisk served a third-party subpoena and forty-eight document requests to Micron. [*See* Ta

27  Decl., Ex. A.] These requests were tailored to the lawsuit between SanDisk and Round Rock and

28  were organized into a small number of categories relevant to the claims and defense at hand. For

1   instance, Category A concerns Micron's sale of patents to Round Rock; Category B concerns

2   various Micron license agreements; Category C concerns documents related to the patents-in-suit;

3   Categories D through K ask for documents that show how Micron's products might have

4   incorporated the patented features; Category L concern's Micron's knowledge and awareness of

5   SanDisk's products and investments; and Category M concerns Micron's obligations to standards

6   setting organizations such as JEDEC and ONFi.  [*Id.*]  On January 23, 2013, Micron served its

7   objections and responses to SanDisk's requests.  Subsequently, Micron—a corporation of over

8   twenty-thousand employees that has been developing products since 1978—has produced only 1,270

9   documents spread out over four productions in response to SanDisk's document requests regarding

10  the patents-in-suit. [*See* Ta Decl., at ¶ 4.]  Micron produced 536 documents on March 13, 2013; 38

11  documents on April 30, 2013; a single sixteen-page license agreement on May 17, 2013; and 695

12  documents on June 13, 2013. [*Id.*]  Over 95% of this latter production, however, was padded with

13  prosecution histories and PTO correspondence for the patents-in-suit, and many documents were

14  duplicative of documents already produced by its partner (Round Rock) in previous document

15  productions. [*Id.*]

16         Over the course of several meet-and-confers, SanDisk came to discover one reason why

17  Micron's document production was so deficient.  In the meet and confer of July 25, 2013, in

18  response to SanDisk's questions regarding Micron's document collection process, Micron admitted

19  that, for some of the document requests, it had produced documents based on a very narrow search

20  for the patents-in-suit. [*See* Ta Decl., Ex. C.]  Micron further confirmed that if, for example, it had

21  had analyses concerning the testing of a claimed feature in a particular SanDisk product (e.g., the use

22  of "dual data rate" processing as claimed in U.S. Patent No. 6,570,791 (the "'791 patent")), such

23  documents would not be produced unless those documents explicitly made reference to a specific

24  patent.  [*Id.*]   In other words, any inventors' notebooks or memoranda, general engineering

25  documents, and design files that predate the issuance of the patents-in-suit may not show up in

26  Micron's search despite their relevance because these documents may not reference an as-yet

27  unissued patent.   Though Micron's narrow and defective search method deprives SanDisk of

28  important relevant documents, Micron has denied SanDisk's request to perform broader searches.

**B.    Legal Standard.**

The scope of discovery through a third-party subpoena under Federal Rule of Civil Procedure 45 is the same as that for party discovery under Federal Rule of Civil Procedure 34.  Upon a motion to compel, the moving party has the burden of demonstrating relevance.  [*Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995).]  Parties may obtain discovery about any non-privileged matter that is relevant to any party's claim or defense. [Fed. R. Civ. P. 26(b)(1).]  Relevance under Rule 26(b) is broadly defined: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." [*Id.*]  The Federal Rules provide that an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond.  [Fed. R. Civ. P. 37(a)(3).]

**C.    Micron's Discovery Shortcomings Have Prejudiced SanDisk.**

Micron alleges it has searched and produced all documents related to (1) the incorporation of accused features in Micron's products; (2) the marking of Micron products, or lack thereof; (3) Micron's inventors' notebooks and documents; (4) Micron's knowledge and analysis of the accused SanDisk products; and (5) Micron's communications with JEDEC and other standards setting organizations regarding the patents-in-suit or related patents.  [*See* Ta Decl., Ex. B.] Nonetheless, as discussed below, a review of Micron's document production has uncovered large deficiencies that are unreasonably impeding SanDisk's ability to develop its claims and defenses.

     **1.    Micron Has Not Produced All Documents Showing the Incorporation of the Claimed Features in Micron's Products (Document Request Nos. G-1, I-1, I-2, J-1, and K-1).**

SanDisk's Document Request Nos. G-1, I-1, I-2, J-1, and K-1 and Micron's responses below generally pertain to the incorporation of patented features in Micron's memory products and SyncFlash technology:

> **Document Request No. G-1**: DOCUMENTS sufficient to depict test mode operations of MICRON memory products that vary the length or width of data communications before July 28, 1995. [*Related to* the '586 patent.]
>
> **Response to Document Request No. G-1**:  Micron objects to this request as vague and ambiguous as to the phrases "test mode operations," and "MICRON memory products that vary the length or width of data communications." To the extent that SanDisk requests that Micron search for documents relating to any

Micron products, SanDisk must specifically identify those products so that Micron can reasonably ascertain the scope of this request. Micron further objects to this request as overbroad, unduly burdensome, and calling for documents that are neither relevant to any issue in this action nor reasonably calculated to lead to the discovery of admissible evidence, to the extent that it calls for documents unrelated to any issue in this case. Micron further objects to this request as overbroad and unduly burdensome to the extent it calls for the production of documents within the possession, custody, or control of a party to the action. Micron further objects to this request as overbroad and unduly burdensome for failing to narrowly tailor the request to relevant issues in the case or identify the requested documents with reasonably sufficient particularity. Subject to its general objections and the foregoing specific objections, Micron will produce responsive, non-privileged documents to the extent such documents exist and are located after a reasonable search.

**Document Request No. I-1**: DOCUMENTS sufficient to show the development and use of MICRON's SyncFlash technology, including product and user manuals, schematics, data sheets, functional specifications, and patent prosecution DOCUMENTS for any patents related to MICRON's SyncFlash technology. [*Related to* the '791 patent.]

**Response to Document Request No. I-1**: Micron objects to this request as vague and ambiguous as to the phrases "the development and use of MICRON's SyncFlash technology" and "any patents related to MICRON's SyncFlash technology." To the extent that SanDisk requests that Micron search for documents relating to any patents, SanDisk must identify those patents by number so that Micron can reasonably ascertain the scope of this request. Micron further objects to this request as overbroad, unduly burdensome, and calling for documents that are neither relevant to any issue in this action nor reasonably calculated to lead to the discovery of admissible evidence, to the extent that it calls for documents unrelated to any issue in this case. Micron further objects to this request as overbroad and unduly burdensome to the extent it calls for the production of documents within the possession, custody, or control of a party to the action. Micron further objects to this request as overbroad and unduly burdensome for failing to narrowly tailor the request to relevant issues in the case or identify the requested documents with reasonably sufficient particularity. Micron further objects to this request to the extent it calls for the production of documents that are in the public domain. Subject to its general objections and the foregoing specific objections, Micron will produce responsive, non-privileged documents to the extent such documents exist and are located after a reasonable search.

**Document Request No. I-2**: DOCUMENTS establishing the date of first sampling and first sale of MICRON's SyncFlash technology. [*Related to* the '791 patent.]

**Response to Document Request No. I-2**: Micron objects to this request as vague and ambiguous as to the phrase "first sampling." Micron further objects to this request as overbroad, unduly burdensome, and calling for documents that are neither relevant to any issue in this action nor reasonably calculated to lead to the discovery of admissible evidence, to the extent that it calls for documents

unrelated to any issue in this case. Micron further objects to this request as overbroad and unduly burdensome to the extent it calls for the production of documents within the possession, custody, or control of a party to the action. Micron further objects to this request as overbroad and unduly burdensome for failing to narrowly tailor the request to relevant issues in the case or identify the requested documents with reasonably sufficient particularity. Micron further objects to this request to the extent calls for the production of documents that are in the public domain. Subject to its general objections and the foregoing specific objections, Micron will produce responsive, non-privileged documents to the extent such documents exist and are located after a reasonable search.

**Document Request No. J-1**: DOCUMENTS sufficient to show MICRON products in which commands from an external input signal are latched at a command data latch, and addresses from an external input signal are interleaved in address data latches. [*Related to* U.S. Patent No. 7,483,334.]

> **Response to Document Request No. J-1**: Micron objects to this request as vague and ambiguous as to the phrase "MICRON products in which commands from an external input signal are latched at a command data latch, and addresses from an external input signal are interleaved in address data latches." To the extent that SanDisk requests that Micron search for documents relating to any Micron products, SanDisk must specifically identify those products so that Micron can reasonably ascertain the scope of this request. Micron further objects to this request as overbroad, unduly burdensome, and calling for documents that are neither relevant to any issue in this action nor reasonably calculated to lead to the discovery of admissible evidence, to the extent that it calls for documents unrelated to any issue in this case. Micron further objects to this request as overbroad and unduly burdensome to the extent it calls for the production of documents within the possession, custody, or control of a party to the action. Micron further objects to this request as overbroad and unduly burdensome for failing to narrowly tailor the request to relevant issues in the case or identify the requested documents with reasonably sufficient particularity. Subject to its general objections and the foregoing specific objections, Micron will produce responsive, non-privileged documents to the extent such documents exist and are located after a reasonable search.

**Document Request No. K-1**: DOCUMENTS sufficient to show MICRON memory products having an adjustable current consumption in which a data register stores a mode control bit that reduces the current and power in response to a state of the mode control bit. [*Related to* U.S. Patent No. 6,845,053.]

> **Response to Document Request No. K-1**: Micron objects to this request as vague and ambiguous as to the phrase "MICRON memory products having an adjustable current consumption in which a data register stores a mode control bit that reduces the current and power in response to a state of the mode control bit." To the extent that SanDisk requests that Micron search for documents relating to any Micron products, SanDisk must specifically identify those products so that Micron can reasonably ascertain the scope of this request. Micron further objects to this request as overbroad, unduly burdensome, and calling for documents that are neither relevant to any issue in this action nor

reasonably calculated to lead to the discovery of admissible evidence, to the extent that it calls for documents unrelated to any issue in this case. Micron further objects to this request as overbroad and unduly burdensome to the extent it calls for the production of documents within the possession, custody, or control of a party to the action. Micron further objects to this request as overbroad and unduly burdensome for failing to narrowly tailor the request to relevant issues in the case or identify the requested documents with reasonably sufficient particularity. Subject to its general objections and the foregoing specific objections, Micron will produce responsive, non-privileged documents to the extent such documents exist and are located after a reasonable search.

[Ta Decl., Ex. D at 20-21, 23-26.] Micron's minimal production of responsive documents to these requests is inexcusable given that the requested information about Micron's memory and SyncFlash products is fully within its control, custody, and possession.[1] Nonetheless, SanDisk is not surprised that critical documents have still not been produced, given that Micron's search for documents was limited to a narrow category of documents specifically referencing the patents-in-suit.

Indeed, based on a limited search for documents on the Internet and from SanDisk's deposition of a Micron inventor named Kevin Widmer, there is ample evidence that Micron's production with respect to these topics is deficient. For example, during his deposition, Mr. Widmer disclosed that



[See Ta Decl., Ex. E at § 4.2.]

1    [Ta Decl., Ex. F, at 151:18−152:8.]  In another exchange, ███████████

2    ████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████

4    ████████████████████████████████████████████████    To

5    date, Micron has still not produced a single data sheet or document regarding any second-generation

6    SyncFlash products.  Although the referenced datasheets were discovered by SanDisk during an

7    online search, SanDisk does not know how many data sheets or engineering documents about

8    SyncFlash were ever created and should not be obligated to depend on Internet searches for

9    information that is within the control, custody, and possession of Micron and responsive to

10   SanDisk's document subpoena.

11        As discussed above, documents showing the incorporation of the patented features in

12   Micron's products are essential for establishing the date of first sale of the patented articles for an

13   analysis of the parties' patent marking claims and damages.  Such documents can also reveal the

14   facts and circumstances surrounding the conception and reduction to practice of the claimed

15   inventions.  Moreover, information about Micron's incorporation of the claimed inventions may

16   disclose how an invention is related to prior art and might include statements showing that a patent is

17   obvious or anticipated in view of the prior art.  Such documents can also support or undermine

18   various secondary indicia of non-obviousness.  For example, any failure to implement the claimed

19   features might be probative of Micron's expectations of commercial success for the claimed

20   inventions. Indeed, Round Rock claims that Micron's alleged inventions are not obvious because

21   they were commercially successful and satisfied a long-felt need.  [Ta Decl., Ex. G.]  If that were

22   true, Micron should have documents establishing those facts.  If implementation and sales data

23   reveal that the Micron products that practiced the invention were not successful, that would tend to

24   establish that the asserted patents are not valuable and represent only obvious solutions to problems

25   or that the success of any given product is not a result of incorporation of the patented features but

26   because of other non-patented functionality. Because these documents are necessary for SanDisk to

27   develop its claims and defenses, SanDisk requests that the Court order Micron to broaden its search

28

beyond a search for specific patent numbers and produce documents responsive to Document Request Nos. G-1, I-1, I-2, J-1, and K-1.

### 2. Micron Has Not Produced Documents Relevant to the Marking of Micron's Products (Document Request No. C-5).

Document Request No. C-5 requests information about the patent marking activities, or lack thereof, of Micron and its licensees:

**Document Request No. C-5**: DOCUMENTS sufficient to show that MICRON marked MICRON products with the patent numbers corresponding to one or more of the PATENTS-IN-SUIT.

[Ta Decl., Ex. A, at 6.] Under the patent marking statute, a patentee's marking of "patented articles" with the applicable patent numbers serves as notice to the public that the goods are patented.[2] [35 U.S.C. § 287(a).] As evidence of marking, a patentee must identify all products that embody or incorporate the patented invention. Absent proper marking, the patentee and its assignee are not entitled to damages for infringement that took place before the alleged infringer received actual notice of the infringement. [Id.] The patentee and assignee bear the burden of proving compliance with the patent marking statute. [See Nike, Inc. v. Wal-Mart Stores, Inc., 138 F. 3d 1437, 1446 (Fed. Cir. 1998).] Here, despite Round Rock and Micron's burden to show evidence of marking, and despite the fact that any relevant patent marking documents are at Micron's fingertips, Micron has not provided an adequate response or produced documents indicating either way whether it does or does not mark or require licensees to mark products that embody the claimed inventions.[3] Micron, instead, responds that:

---

[2]  35 U.S.C. § 287(a) provides that patentees "making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent . . . . In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.  Filing of an action for infringement shall constitute such notice."

[3]  Although Round Rock, in its response to SanDisk's interrogatories, has stated that it is "currently not aware of any products sold by licensees of the Patents-In-Suit that are marked with the patent numbers of the Patents-In-Suit," Micron, has not confirmed or denied whether this is true. [See Ta Decl., Ex. H.]

**Response to Document Request No. C-5**: Micron objects to this request as overbroad and unduly burdensome to the extent it calls for the production of documents within the possession, custody, or control of a party to the action. Subject to its general objections and the foregoing specific objections, Micron will produce responsive, non-privileged documents to the extent such documents exist, have not been produced, and are located after a reasonable search.

[Ta Decl. Ex. D at 15.] Because Micron is in a superior position to know (1) whether it or any of its licensees or Micron itself produced products related to the patented features; and (2) whether such products were ever sold or offered for sale, the Court should order Micron to commit to a position regarding its and its licensees' patent marking efforts, or certify that it did sell products that incorporated the patented inventions but did not mark them. [*See. e.g.*, *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 651 (N.D. Cal. 2004) ("When responding to interrogatories, a party has a duty to respond with all the information under its custody and control.") (granting motion to compel patent marking documents and requiring a declaration stating defendant's efforts to collect all responsive documents, that all responsive documents have been provided, and that defendant has exhausted all efforts to locate responsive documents.).]

Such an order is necessary because any evidence that Micron or its licensees did not mark its products would bar past damages prior to actual notice. [*See* 35 U.S.C. § 287(a).] For example, Round Rock has asserted U.S. Patent Nos. 5,682,345 (the "'345 patent") and 6,272,586 (the "'586 patent"), two formerly-owned Micron patents, against SanDisk's mDOC H3 products. SanDisk, however, stopped selling its mDOC H3 products in the fourth quarter of 2011—around the same time the *Round Rock* litigation was filed. If Micron's failure to mark its own products prevents recovery of pre-suit damages under § 287(a)), then Round Rock would only be able to recover damages for the de minimis amount of sales of SanDisk's mDOC H3 products that occurred after the lawsuit was filed. Thus, information about Round Rock's marking activity is, at a minimum, relevant to the parties' damages analyses.

Furthermore, information about the sales and revenues of any "patented articles" is probative of various secondary indicia of non-obviousness, including whether the patented articles enjoyed commercial success or addressed a long-felt but unresolved need. Accordingly, the Court should order Micron to commit to a position as to whether it has any patented articles to mark and whether

those patented articles have indeed been marked, by providing a supplemental response to Document Request No. C-5, and/or by producing responsive documents regarding its patent marking activities.

**3. Micron Has Not Produced All Responsive Inventors' Notebooks (Document Request No. C-4).**

Document Request No. C-4 requests copies of inventors' notebooks for each patent-in-suit:

**Document Request No. C-4**: For each of the PATENTS-IN-SUIT, copies of the inventors' notebooks for the time frame spanning two years before the effective filing date of the relevant patent-in-suit up to the effective filing date of the relevant patent-in-suit.

[Ta Decl., Ex. A, at 6.]  Such notebooks are used by scientists and engineers to record their ideas, inventive processes, and experimental results and observations.  As shown in Table 1 below, Micron has not produced notebooks for five of the eleven inventors-in-suit: Keven Widmer, Michael Briner, Darrel Rinerson, Chang Wan Ha,[4] and Fred Roe.  Even as to the six inventors for whom Micron has produced inventors' notebooks, the majority of the notebooks are not relevant to the claims or patents-at-issue.

| Inventor | U.S. Patent No. | Notebook Produced? |
|---|---|---|
| Kevin Widmer | 6,570,791 | No |
| Michael Briner | 5,682,345 6,272,586 | No |
| Darrell Rinerson | 6,272,586 | No |
| Chang Wan Ha | 7,483,334 | No |
| Fred Roe | 6,015,760 5,286,344 | No |
| Frankie Roohparvar | 6,570,791 5,682,345 6,272,586 | Yes |
| Christophe Chevallier | 6,272,586 6,845,053 | Yes |
| Larry D. Kinsman | 6,383,839 | Yes |
| Shane P. Leiphart | 5,783,282 | Yes |
| Guy Blalock | 6,015,760 5,286,344 | Yes |
| David S. Becker | 6,015,760 5,286,344 | Yes |

**TABLE 1. STATUS OF MICRON'S PRODUCTION OF INVENTORS' NOTEBOOKS**

---

[4]  SanDisk notes that Micron has produced only a single nine page presentation by inventor Chang Wan Ha (MICRON00002376 – 2384), but has not produced any inventors' notebooks.

In response, Micron provides the following objections to Document Request C-4:

> **Response to Document Request No. C-4**: Micron objects to this request to the extent it calls for the production of documents protected from discovery by the attorney-client privilege and/or the work product doctrine. Micron further objects to this request as overbroad and unduly burdensome to the extent it calls for the production of documents within the possession, custody, or control of a party to the action. Subject to its general objections and the foregoing specific objections, Micron will produce responsive, non-privileged documents to the extent such documents exist, have not been produced, and are located after a reasonable search.

[Ta Decl. Ex. D at 14-15.]  Micron thus claims that some or all of the inventors' notebooks are somehow privileged, even though none of these purportedly "privileged" notebooks are documented in Micron's Privilege Logs.  [See Ta Decl., Exs. I and J.]  Based on Micron's response, SanDisk reasonably believes that Micron is withholding relevant inventors' notebooks that it claims are privileged.  Micron should either produce these documents or supplement its privilege log.

Given the small number of inventors' notebooks produced by Micron, SanDisk has good reason to infer that responsive and highly relevant documents are still being withheld.  For example, it is highly suspect that Micron has produced only one 24-page inventor's notebook for Mr. Frankie Roohparvar, the named inventor of three of the nine patents-in-suit, despite Mr. Roohparvar's prolific activities at Micron.  SanDisk suspects that Micron's narrow search for documents that specifically reference the patents-in-suit likely passed over inventors' notebooks and documents that predate the issuance of the relevant patents.

It is obvious that inventors' notebook and other contemporaneous documents regarding the claimed inventions are relevant to SanDisk's claims and defenses.  Such documents reveal facts and circumstances surrounding the conception and reduction to practice of the claimed inventions, including information about who the contributors were, what role they played, and whether other persons were involved.   Inventors' notebooks are also relevant to issues of validity and enforceability.  For example, an inventor's notebook might disclose how an invention is related to prior art and may include statements showing that an idea is obvious or anticipated in view of prior art, or an inventor's notebook may support or undermine various secondary indicia of non-obviousness, such as evidence of critical or unexpected results, evidence of long-felt but unresolved needs, the failure of others, and the skepticism of others.  The inventors' notebooks may further

1   show that the patents-in-suit are derived from another's work. In addition, an inventor's notebook

2   may bear witness to a claim of inequitable conduct if it were revealed that a material prior art

3   reference was deliberately withheld from the Patent and Trademark Office.  Furthermore, the

4   inventors' notebooks may show that the inventors described, but did not claim particular ways of

5   accomplishing the claimed inventions. Because the inventors' documents are relevant to SanDisk's

6   claims and defenses, the Court should compel Micron's diligent search and production of all

7   documents responsive to SanDisk Document Request No. C-4.

8           **4.**      **Micron Has Not Produced All Documents Showing Its Analyses and Knowledge of SanDisk Products and Investments (Document Request Nos. L-1 through L-7).**

9

10         Similarly, Micron's narrow search for documents means that it has not produced all

11   responsive documents to Document Requests L-1 through L-7, relating to Micron's competitive

12   analyses and knowledge of SanDisk's products and investments, including SanDisk's microSD

13   memories, embedded flash drives, solid state drives, flash memory cards, and iSSD devices:

14   **Document Request No. L-1**: DOCUMENTS relating to any competitive analysis

15   performed by MICRON with regard to SANDISK between December 2002 and December 2010.

16        **Response to Document Request No. L-1**: Micron objects to this request to the

17   extent it calls for the production of documents protected from discovery by the attorney-client privilege and/or work product doctrine. Micron further objects to this request as vague and ambiguous as to the phrase "competitive analysis."

18   Micron further objects to this request to the extent it calls for the production of documents relating to earlier litigation with SanDisk (and any other requests

19   that could be construed as seeking such information) as overbroad, unduly burdensome, and seeking documents protected from discovery by the attorney-

20   client privilege and/or the work product doctrine. To the extent any such documents may be discoverable, they are already in the possession, custody, or

21   control of SanDisk. Micron further objects to this request as overbroad, unduly burdensome, and calling for documents that are neither relevant to any issue in

22   this action nor reasonably calculated to lead to the discovery of admissible evidence, to the extent that it calls for documents unrelated to the patents or

23   patented technology at issue. Micron further objects to this request as overbroad and unduly burdensome to the extent it calls for the production of documents

24   within the possession, custody, or control of a party to the action. Micron further objects to this request as overbroad and unduly burdensome for failing to

25   narrowly tailor the request to relevant issues in the case or identify the requested documents with reasonably sufficient particularity. Subject to its general

26   objections and the foregoing specific objections, Micron will produce responsive, non-privileged documents to the extent such documents exist and

27   are located after a reasonable search.

28

SanDisk's Motion to Compel Micron's Production of Documents
2019901
    13    Case No. _____

**Document Request No. L-2**: DOCUMENTS relating to any analysis of SANDISK's investments in marketing, manufacturing or sales of flash memory products between December 2002 and December 2010.

**Response to Document Request No. L-2**: Micron objects to this request to the extent it calls for the production of documents protected from discovery by the attorney-client privilege and/or the work product doctrine. Micron further objects to this request as vague and ambiguous as to the phrase "investments in marketing, manufacturing or sales of flash memory products." Micron further objects to this request as overbroad, unduly burdensome, and calling for documents that are neither relevant to any issue in this action nor reasonably calculated to lead to the discovery of admissible evidence, to the extent that it calls for documents unrelated to the patents or patented technology at issue. Micron further objects to this request as overbroad and unduly burdensome to the extent it calls for the production of documents within the possession, custody, or control of a party to the action. Micron further objects to this request as overbroad and unduly burdensome for failing to narrowly tailor the request to relevant issues in the case or identify the requested documents with reasonably sufficient particularity. Subject to its general objections and the foregoing specific objections, Micron will produce responsive, non-privileged documents to the extent such documents exist and are located after a reasonable search.

**Document Request No. L-3**: DOCUMENTS sufficient to show MICRON's awareness of SANDISK's MicroSD memory products from 2002 through 2010.

**Response to Document Request No. L-3**: Micron objects to this request as vague and ambiguous as to the phrase "awareness of SANDISK's MicroSD memory products." Micron further objects to this request as overbroad, unduly burdensome, and calling for documents that are neither relevant to any issue in this action nor reasonably calculated to lead to the discovery of admissible evidence, to the extent that it calls for documents unrelated to any issue in this case. Micron further objects to this request as overbroad and unduly burdensome to the extent it calls for the production of documents within the possession, custody, or control of a party to the action. Micron further objects to this request as overbroad and unduly burdensome for failing to narrowly tailor the request to relevant issues in the case or identify the requested documents with reasonably sufficient particularity. Subject to its general objections and the foregoing specific objections, Micron will produce responsive, non-privileged documents to the extent such documents exist and are located after a reasonable search.

**Document Request No. L-4**: DOCUMENTS sufficient to show MICRON's awareness of SANDISK's embedded flash drive products from 2002 through 2010.

**Response to Document Request No. L-4**: Micron objects to this request as vague and ambiguous as to the phrase "awareness of SANDISK's embedded flash drive products." Micron further objects to this request as overbroad, unduly burdensome, and calling for documents that are neither relevant to any issue in this action nor reasonably calculated to lead to the discovery of admissible evidence, to the extent that it calls for documents unrelated to any issue in this case. Micron further objects to this request as overbroad and unduly burdensome to the extent it calls for the production of documents within the possession, custody, or control of a party to the action. Micron further objects to this request as overbroad and unduly burdensome for failing to narrowly tailor the request to relevant issues in the case or identify the requested documents with reasonably sufficient particularity. Subject to its general objections and the

foregoing specific objections, Micron will produce responsive, non-privileged documents to the extent such documents exist and are located after a reasonable search.

**Document Request No. L-5**: DOCUMENTS sufficient to show MICRON's awareness of SANDISK's solid state drive products from 2002 through 2010.

    **Response to Document Request No. L-5**: Micron objects to this request as vague and ambiguous as to the phrase "awareness of SANDISK's solid state drive products." Micron further objects to this request as overbroad, unduly burdensome, and calling for documents that are neither relevant to any issue in this action nor reasonably calculated to lead to the discovery of admissible evidence, to the extent that it calls for documents unrelated to any issue in this case. Micron further objects to this request as overbroad and unduly burdensome to the extent it calls for the production of documents within the possession, custody, or control of a party to the action. Micron further objects to this request as overbroad and unduly burdensome for failing to narrowly tailor the request to relevant issues in the case or identify the requested documents with reasonably sufficient particularity. Subject to its general objections and the foregoing specific objections, Micron will produce responsive, non-privileged documents to the extent such documents exist and are located after a reasonable search.

**Document Request No. L-6**: DOCUMENTS sufficient to show MICRON's awareness of SANDISK's flash memory cards.

    **Response to Document Request No. L-6**: Micron objects to this request as vague and ambiguous as to the phrase "awareness of SANDISK's SD flash memory cards." Micron further objects to this request as overbroad, unduly burdensome, and calling for documents that are neither relevant to any issue in this action nor reasonably calculated to lead to the discovery of admissible evidence, to the extent that it calls for documents unrelated to any issue in this case. Micron further objects to this request as overbroad and unduly burdensome to the extent it calls for the production of documents within the possession, custody, or control of a party to the action. Micron further objects to this request as overbroad and unduly burdensome for failing to narrowly tailor the request to relevant issues in the case or identify the requested documents with reasonably sufficient particularity. Subject to its general objections and the foregoing specific objections, Micron will produce responsive, non-privileged documents to the extent such documents exist and are located after a reasonable search.

**Document Request No. L-7**: DOCUMENTS sufficient to show MICRON's awareness of SANDISK's iSSD devices.

    **Response to Document Request No. L-7**: Micron objects to this request as vague and ambiguous as to the phrase "awareness of SANDISK's iSSD devices." Micron further objects to this request as overbroad, unduly burdensome, and calling for documents that are neither relevant to any issue in this action nor reasonably calculated to lead to the discovery of admissible evidence, to the extent that it calls for documents unrelated to any issue in this case. Micron further objects to this request as overbroad and unduly burdensome to the extent it calls for the production of documents within the possession, custody, or control of a party to the action. Micron further objects to this request as overbroad and unduly burdensome for failing to narrowly tailor the request to relevant issues in the case or identify the requested documents

1   with reasonably sufficient particularity. Subject to its general objections and the
    foregoing specific objections, Micron will produce responsive, non-privileged
2   documents to the extent such documents exist and are located after a reasonable
    search.

3   [Ta Decl., Ex. D at 27-31.]  Micron has refused to produce any information that it has accumulated

4   on SanDisk, and appears to have produced only one document █████████████████████████

5   ██████████████████████████  [*See* Ta Decl., Ex. K ████████████████████████████

6   ████████████████████████████████████████████████.]  Importantly, however, the Patent

7   Sale and Transfer Agreement governing the sale of Micron's patent portfolio to Round Rock

8   suggests that ███████████████████████████████████████████████████████████████

9   ███████████████████████████████████████████████.  [*See* Ta Decl., Ex. E at § 4.2

10  (emphasis added).]  In other words, ██████████████████████████████████████████

11  ██████████████████████████████  Given SanDisk and Micron's history as competitors in the

12  flash memory industry, it is difficult to fathom how █████████████████████  could have

13  produced only a single competitive analysis of SanDisk's flash memory products.

14         As one can appreciate, documents related to Micron's competitive analyses of SanDisk's

15  products are relevant to SanDisk's claims and defenses because they bear directly on SanDisk's

16  affirmative defenses of laches and equitable estoppel.  SanDisk contends that the defenses of laches

17  and equitable estoppel bar Round Rock from collecting pre-suit damages because Micron was well

18  aware of the allegedly infringing aspects of SanDisk's products long before Round Rock asserted the

19  patents-in-suit against SanDisk in 2012.  SanDisk further contends that Round Rock/Micron's delay

20  in enforcing its patents has prejudiced SanDisk's ability to defend itself because relevant documents

21  may have been lost or destroyed in the meantime. For example, through its participation in the

22  JEDEC standard setting process, and through its products and those of its subsidiary, Lexar, SanDisk

23  reasonably believes that Micron was aware of the operation of SanDisk's products.  As discussed

24  below in Section II.C.5, however, Micron has produced only a handful of documents relating to its

25  participation in relevant standard setting organizations.  Moreover, SanDisk reasonably believes that

26  Micron was aware of SanDisk's products in connection with *SanDisk Corp. v. Micron Tech., Inc.*,

27  No. 4:02-cv-02627 (N.D. Cal., filed May 31, 2002), in which Micron had previously asserted

28  infringement of two of the exact same patents that Round Rock is currently asserting in the current

SanDisk's Motion to Compel Micron's              16                           Case No. _____
Production of Documents
2019901

1  lawsuit—U.S. Patent Nos. 5,286,344 ("the '344 patent") and 6,015,760 ("the '760 patent").

2  Micron's investigations into SanDisk's products and the activities of SanDisk's third party

3  manufacturers in that litigation might be probative of what Micron knew of SanDisk's products and

4  processes over a decade ago.  As it stands, SanDisk cannot fully develop its laches or equitable

5  estoppel defense because Micron has refused to produce relevant documents that show when and

6  what Micron knew about the relevant SanDisk's products.

7       Micron's analyses of SanDisk's products also bear on certain secondary considerations of

8  non-obviousness.  For example, Micron's analyses might point to the features and factors that

9  mattered most to customers in the flash memory industry and/or whether or not certain patented

10  features drove the sales of a product—an analysis that is also relevant to the value of a patented

11  feature for purposes of damages calculations.  Because this information is relevant to SanDisk's

12  claims and defenses, SanDisk respectfully requests the Court to compel Micron to broaden its search

13  of documents and to produce all responsive competitive analyses generated by Micron, including but

14  not limited to documents █████████████████████████.

### 5. Micron Has Not Produced All Documents Showing Its Obligations to JEDEC or ONFi (Document Requests Nos. M-1 and M-2).

17       Micron has also failed to complete its production of documents with respect to Document

18  Requests Nos. M-1 and M-2, which concern Micron's obligations to standards setting organizations

19  such as JEDEC and ONFi:

20       **Document Request No. M-1**: DOCUMENTS relating to any COMMUNICATIONS
21       between MICRON and any standards setting organization (e.g. JEDEC, ONFi, etc.)
         relating to any of the PATENTS-IN-SUIT or a RELATED PATENT.

22       **Response to Document Request No. M-1**:  Micron objects to this request to
         the extent it calls for the production of documents protected from discovery by
23       the attorney-client privilege and/or the work product doctrine. Micron further
         objects to this request as vague and ambiguous as to the phrases "any standards
24       setting organization" and "RELATED PATENT." Micron further objects to this
         request as overbroad, unduly burdensome, and calling for documents that are
25       neither relevant to any issue in this action nor reasonably calculated to lead to
         the discovery of admissible evidence, to the extent that it calls for documents
26       unrelated to any issue in this case. Micron further objects to this request as
         overbroad and unduly burdensome to the extent it calls for the production of
27       documents within the possession, custody, or control of a party to the action.
         Micron further objects to this request to the extent it calls for the production of
28       documents that are in the public domain. Micron further objects to this request

1
2
3

as overbroad and unduly burdensome for failing to narrowly tailor the request to relevant issues in the case or identify the requested documents with reasonably sufficient particularity. Subject to its general objections and the foregoing specific objections, Micron will produce responsive, nonprivileged documents to the extent such documents exist and are located after a reasonable search.

4
5

**Document Request No. M-2**: DOCUMENTS relating to any COMMUNICATIONS between MICRON and JEDEC or ONFi regarding the terms and conditions under which MICRON would make any of the PATENTS-IN-SUIT or a RELATED PATENT available for license in order to practice a standard.

6
7
8
9
10
11
12
13
14
15

> **Response to Document Request No. M-2**: Micron objects to this request to the extent it calls for the production of documents protected from discovery by the attorney-client privilege and/or the work product doctrine. Micron further objects to this request as vague and ambiguous as to the phrase "RELATED PATENT." Micron further objects to this request as overbroad, unduly burdensome, and calling for documents that are neither relevant to any issue in this action nor reasonably calculated to lead to the discovery of admissible evidence, to the extent that it calls for documents unrelated to any issue in this case. Micron further objects to this request as overbroad and unduly burdensome to the extent it calls for the production of documents within the possession, custody, or control of a party to the action. Micron further objects to this request to the extent calls for the production of documents that are in the public domain. Micron further objects to this request as overbroad and unduly burdensome for failing to narrowly tailor the request to relevant issues in the case or identify the requested documents with reasonably sufficient particularity. Subject to its general objections and the foregoing specific objections, Micron will produce responsive, non-privileged documents to the extent such documents exist and are located after a reasonable search.

16  [Ta Decl., Ex. D at 31-32.]  With respect to these requests, Micron has accused certain SanDisk

17  products of infringing U.S. Patent No. 6,845,053 (the "'053 patent") based on alleged compliance

18  with the JEDEC Solid State Technology Association ("JEDEC") standard.  JEDEC is a standard

19  setting organization that formulates open standards for microelectronics.  The standardization

20  process is valuable to industry members because it facilitates product interoperability and

21  compatibility.  But as Micron is well aware, standardization can lose these benefits if manufacturers

22  fail to disclose intellectual property potentially relevant to the proposed standard.  [*See* Ta Decl., Ex.

23  L (letter from Micron to JEDEC discussing its prior litigation with Rambus, Inc. in which it affirmed

24  its "strong[ ] support" of JEDEC's disclosure rules and accused Rambus of "hiding relevant patented

25  technology from the JEDEC Committees in which it participated.")].  For that reason, JEDEC has

26  long maintained patent-disclosure rules to protect the efficacy of the standard-setting process.  For

27  patents essential to implementation of the standard, JEDEC has required participants to agree to

28  terms making it impossible for these members to advocate for the adoption of a patented invention in

1   the standard, only to turn around to sue other parties on the same standard-essential patent. As a

2   member of JEDEC, Micron is obligated to properly disclose any patents it considers to be standard-

3   essential patents to JEDEC or risk having its patents rendered unenforceable. [*See, e.g.*, Ta Decl.,

4   Ex. M at 24 (showing the revised 2010 JEDEC Manual of Organization and Procedure, which

5   provides that "[a]ll Committee Members must Disclose Potentially Essential Patents . . . that are

6   owned or controlled by that Committee Member to the personal knowledge of the

7   Representatives").] If disclosure is required, the members agree to license either "without

8   compensation" or "under reasonable terms and conditions that are demonstrably free of any unfair

9   discrimination." [*See id.* at 35.]

10      Micron's communications with JEDEC are thus highly relevant for many reasons. First,

11  evidence of Micron's knowledge and participation in the setting of JEDEC standards might show

12  that Micron was aware of the features it is now claiming are infringed and incorporated into the

13  JEDEC standard. Micron's purposeful non-disclosure of any standards-essential patents would

14  render the purported standard essential patents unenforceable, and thus properly subject those

15  patents to royalty-free licensing. Second, because SanDisk and Micron were contemporaneous

16  members of JEDEC, certain JEDEC documents could reveal what Micron knew about SanDisk's

17  compliance with the JEDEC standard. These communications would be relevant to SanDisk's

18  laches and equitable estoppel defense because such communications might show that Micron knew

19  early on that certain SanDisk products practiced the standard which Micron's enforcement partner,

20  Round Rock, is now accusing. Third, communications regarding the adoption of features in the

21  JEDEC standard is relevant because such communications might point to viable alternative features

22  that could have been adopted into the standard but for any attempts on Micron's part to steer the

23  JEDEC committee away from those alternatives and toward features in its own patents. Micron's

24  participation in the JEDEC committee would therefore be relevant to SanDisk's unenforceability

25  claims if it were shown that Micron (or Round Rock) later sued on its non-disclosed standard-

26  essential features. Finally, the terms and conditions under which Micron would license its patents in

27  order to practice the standard are pertinent to the parties' damages analysis.

28

---

SanDisk's Motion to Compel Micron's                19                    Case No. _____
Production of Documents
2019901

SanDisk has reason to believe that Micron is still withholding documents relevant to its communications with JEDEC. In recent months, SanDisk has received document productions from JEDEC itself that reveal that Micron has not produced all documents related to its patent disclosure obligations. In particular, Micron's in-house counsel, Mr. Joel Poppen, has submitted multiple disclosure forms to JEDEC, but not all of these responsive disclosures have been included in Micron's document production. [See, e.g., Ta Decl., ¶¶ 16 and 17; Exs. N and O (showing disclosure forms from Mr. Poppen that were found in JEDEC's document production, but not in Micron's production).] The Court should compel all responsive documents, including, but not limited to communications between Mr. Poppen and JEDEC.

Additionally, SanDisk's review of its own communications with JEDEC shows that Micron participated in discussions on the "JEDEC Reflector," a listserv hosted for communication between JEDEC members. These listserv emails involve exchanges that include the names of at least six Micron employees who have had communications with JEDEC regarding the adoption of standards-essential features. [See, e.g., Ta Decl., Ex. P.] These Micron employees include Mr. Bill Radke, Mr. Victor Tsai, Mr. Neal Galbo, Mr. Takehiro Hasegawa, Mr. Tom Teng, and Mr. Uche Ugokwe.[6] [See id.] SanDisk therefore has reason to believe that Micron has not produced all of its communications with JEDEC regarding the patents or claims at issue. Because SanDisk's ability to obtain communications between Micron and JEDEC documents is limited, SanDisk respectfully requests that the Court compel Micron to produce all communications with JEDEC, including but not limited to communications between JEDEC and the Micron employees mentioned above.

## III. CONCLUSION

For the foregoing reasons and because the requested documents are plainly relevant to SanDisk's defenses and claims, SanDisk respectfully requests that the Court order Micron to produce, within ten calendar days of the date of any order resulting from this motion, all documents

---

[6] Likewise, SanDisk's review of its own communications with ONFi shows that at least four Micron employees, Mr. Michael Abraham, Mr. Terry Grunzke, Mr. Feeley, and Mr. Kevin Kilbuck, have participated in ONFi-member discussions regarding the ONFi standard, but these communications have yet to be produced by Micron. [See, e.g., Ta Decl., Ex. Q.] The Court should compel Micron to produce all communications that Micron has had with ONFi regarding the claims and technology at issue.

1  responsive to SanDisk's Document Request Nos. C-4, C-5, G-1, I-1, I-2, J-1, K-1, L1−L7, M1, and

2  M2.

3

4  Dated:  August 8, 2013                                      VINSON & ELKINS LLP

5

6                                                        By:   /s/ Chuck P. Ebertin
                                                              Chuck P. Ebertin

7                                                              Attorneys for Plaintiff
                                                              SanDisk Corporation
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2

I, Chuck Ebertin, certify that:

3

On August 8, 2013, I caused a copy of **PLAINTIFF SANDISK CORPORATION'S**

4

**NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF ITS MOTION**

5

**TO COMPEL PRODUCTION OF SUBPOENAED DOCUMENTS FROM MICRON**

6

**TECHNOLOGY INC.** to be served on counsel for Micron Technology Inc.

7

DESMARAIS LLP

Jon T. Hohenthaner

8

jhohenthaner@desmaraisllp.com

John C. Spaccarotella

9

jspaccarotella@desmaraisllp.com

Ameet A. Modi

10

amodi@desmaraisllp.com

Richard M. Cowell

11

rcowell@desmaraisllp.com

Andrew Heinz

12

aheinz@desmaraisllp.com

230 Park Avenue

13

New York, NY 10169

14

15

▪   by transmitting via electronic mail a true and correct copy of the above-listed document

16

scanned into an electronic file in Adobe "pdf" format.

17

18

I declare under penalty of perjury under the laws of the United States of America that the

19

above is true and correct.  Executed on August 8, 2013 in Palo Alto, California.

20

21

22

_/s/ Chuck P. Ebertin_

Chuck P. Ebertin

23

24

25

26

27

28